FILED

2016 Apr-15  AM 10:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

JOHN BENNETT,                          )
                                       )
            Plaintiff                  )
                                       )
      vs.                              )   Case No.  3:14-cv-01577-HGD
                                       )
COMMISSIONER, SOCIAL SECURITY          )
ADMINISTRATION,                        )
                                       )
            Defendant                  )

**MEMORANDUM OPINION**

Plaintiff, John Bennett, filed an application for disability, disability insurance benefits and supplemental security income in October 2010.  These initial application were denied.  Plaintiff requested a hearing before an administrative law judge (ALJ).  After this hearing, held March 13, 2012, the ALJ issued an opinion on March 21, 2013, finding that plaintiff was not disabled under the Social Security Act.  The Appeals Council denied plaintiff's request for review.  Therefore, this case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

I.      **ALJ Decision**

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in

substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability. *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work,  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds that the

claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

Following this five-step procedure, the ALJ found that plaintiff has the following severe impairments: history of cerebrovascular accident in January 2001; degenerative disk disease of the lumbar spine; essential hypertension; chronic obstructive pulmonary disease/bronchitis; left peripheral neuropathy; and an adjustment disorder with mixed anxiety and depression. The ALJ further found that plaintiff's condition did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (Tr. 15).

The ALJ further found, based on the entire record, that plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 466.967(b), except

that he can perform occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; that he cannot climb ropes, ladders or scaffolds; that he needs to avoid unprotected heights; that he is limited to simple one and two step tasks and simple work-related decisions; that work place changes need to be infrequent and well explained; that he is limited to casual non-intensive interactions with the general public; and that he is able to concentrate and remain on tasks for two hours at a time sufficient to complete an eight-hour workday.  (Tr. 17).

The ALJ also found that plaintiff is unable to perform any past relevant work. (Tr. 24).  Based on plaintiff's age, work-experience and RFC, and the testimony of a vocational expert (VE), the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including labor production assembler, wire threader and egg breaker.  All these representative occupations exist in significant numbers in the Alabama and national economy.  (Tr. 25).  Therefore, the ALJ concluded that plaintiff has not been under a disability as defined in the Social Security Act.  (Tr. 26).

II.     **Plaintiff's Argument for Reversal**

Plaintiff asserts that the ALJ erred when she failed to give controlling weight to plaintiff's treating physician's opinion regarding plaintiff's RFC and his pain. (Doc. 12, Plaintiff's Brief, at 4).

III.    **Standard of Review**

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*,

703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## IV.    **Factual Background**

The ALJ states that, at the hearing, plaintiff testified that he was terminated from his last job in 2008 as a fork lift driver because he was missing a lot of work due to back pain.  Plaintiff alleged that he had a stroke in 2001, and that he has constant pain down his entire left side since that time; that his pain is never below the level of dull; that he had to have physical therapy after the stroke so that he could regain his strength in order to walk again; and that he has a cane that he sometimes uses to walk, though it was not prescribed by a doctor.  He also claimed that he has problems with his blood pressure from time to time and that he takes medication for this condition.  Nonetheless, it is still high on occasion.  Plaintiff also testified that he has severe back pain which was radiating down his right leg, but that his pain has moved and is now radiating down his left leg.  He stated that he has back and leg pain on a daily basis, that it is at the level of 9/10 constantly, and that he has difficulty sleeping due to pain.  Plaintiff also testified that he has chronic obstructive pulmonary disease, that

he can do very little, and that he has to sit down on occasion due to shortness of breath.  (Tr. 17-18).

In describing his functional limitations, plaintiff alleged that he cannot sit or stand for very long, perhaps 10 to 15 minutes at a time.  With regard to his activities of daily living, plaintiff stated that he lives with a friend who does all the cooking and cleaning.  He testified that he has to force himself to get out of bed because of pain and that he alternates between lying on the bed and lying on the couch.  He also stated that he watches television and plays on the computer.  (Tr. 18).

Plaintiff's current treating physician is Dr. David Magas, M.D., with the Collinwood Medical Clinic in Collinwood, Tennessee.  According to the ALJ's decision, Dr. Magas saw plaintiff on June 24, 2010, when plaintiff complained about tingling on his left side.  He gave a history of having a cerebrovascular accident and hypertension, but was not taking any medication for high blood pressure.  His blood pressure was initially measured at 230/145, but it later decreased to 183/112 after he was given medication.  He was diagnosed with hypertension and started on anti-hypertensive medications.  (Tr. 19).  He was seen for a follow-up exam on August 5, 2010.  His blood pressure was 183/110.  He reported that he continued to have pain over his left side and low back pain radiating into his right leg.  Upon examination, plaintiff was noted to walk with a normal gait.  He was noted to be in no acute

distress, and his mood and affect were normal.  Dr. Magas' impressions were that

plaintiff suffered from hypertension and anxiety.  (Tr. 19).

Plaintiff was seen by Dr. Magas again on September 7, 2010.  His blood

pressure was recorded at 169/104.  Plaintiff complained of chronic back pain, which

he rated as a 9 on a 1-10 scale.  He complained that he was continuing to have left

side pain and low back pain wherein the pain radiates down his right leg.  He was

noted to have tenderness in the lumbar area.  However, he was in no acute distress.

Neurological examination was normal.  Dr. Magas' impressions were hypertension;

history of cerebrovascular accident; low back pain and anxiety/depression.  (Tr. 19,

249).

Plaintiff was next seen by Dr. Magas on October 12, 2010.  He again reported

that his back pain was 8 to 9 out of 10 without medication and 3 to 4 out of 10 with

medication.  He also stated that Valium he was taking for anxiety was not effective.

His blood pressure was recorded at 185/109.  He was in no acute distress and his

neurological examination was normal.  On this occasion, Dr. Magas' impressions

were lumbar disk disease, back pain, hypertension and headaches.  (Tr. 19)

Plaintiff was next seen by Dr. Magas on December 2, 2010, due to complaints

of coughing, wheezing and shortness of breath.  He was diagnosed with flu-like

symptoms and sinusitis. He was given medication. (Tr. 19).  Plaintiff was seen again

by Dr. Magas on January 14, 2011, due to complaints of his right hip locking up on him and chronic back pain.  His blood pressure was 167/103.  Neurological examination was normal, and he was in no acute distress nor were any muscle spasms noted.  (Tr. 19).

On January 11, 2011, Dr. Marlin Gill, M.D., examined plaintiff for a disability determination.  Dr. Gill noted that plaintiff's arms appeared normal and symetrical.  Strength was 5/5 bilaterally.  Grip strength was 5/5 in his right hand and 4/5 on the left.  His back looked normal.  There was no tenderness, but plaintiff complained of pain with any lumbar movement.  From the standing position, he could bend forward 20 degrees and rotate 5 degrees bilaterally.  From the supine position, he could lift his legs off the exam table, but he complained of lumbar pain when he did so.  Leg strength was 4/5 bilaterally.  He was able to squat down one-half way and come back up holding onto the table for balance.  He told Dr. Gill that he could not go further due to back pain.  He could not walk on his tiptoes or heels because he said it was painful in the right leg to do so.  (Tr. 272).  Dr. Gill assessed plaintiff with low back pain and no other diagnosis.  (Tr. 273).

Plaintiff was seen again by Dr. Magas on February 1, 2011.  At this time, he complained of nasal discharge, coughing, facial pain, back pain and anxiety.  His blood pressure reading was 152/92.  He complained of pain radiating down his right

leg with an intensity of 9 on a 1-10 scale.  There was moderate tenderness of his paraspinal muscles and right hip; however, his range of motion was full in the lumbar spine.  Dr. Magas' impressions were degenerative disc disease, backache, lumbago, an anxiety state and essential hypertension.  (Tr. 20, 356-57).

Plaintiff was seen again on March 3, 2011, with complaints of anxiety and back pain.  His blood pressure was recorded at 158/98.  There was tenderness in the spinal area and both hips, but his range of motion was full.  (Tr. 20).

Plaintiff was seen again by Dr. Magas on April l, 2011, with complaints of falling two weeks prior after his right hip locked up.  He rated his back pain as a 9 out of 10 without medication and 4 to 5 out of 10 with medication.  He described the pain as radiating down his right leg.  Dr. Magas noted that plaintiff was tender over his spinal column and very tender over the thoraco-lumbar region.  Nonetheless, plaintiff had a full range of motion.  His blood pressure was 145/91.  Otherwise, the ALJ noted, the examination was unchanged from the previous visit.  (Tr. 20).

An MRI performed on April 6, 2011, reflected minimal L3-4 and mild L4-5 and L5-S1 disc bulging in combination with mild facet degenerative change which results in mild L4-5 spinal canal stenosis.  It is noted that there is evidence of mild to moderate right L3 through L5 and bilateral L5-S1 foraminal stenosis.  The impression of the radiologist was that plaintiff suffers from mild diffuse lumbar disc

bulging and facet degenerative change resulting in mild L4-L5 spinal stenosis.  (Tr. 360).

Although not mentioned in the ALJ's decision, plaintiff again saw Dr. Magas on May 2, 2011.  He again reported leg pain radiating down his right leg with a 9/10 intensity without medication and a 4/5 intensity with medication.  On this occasion he also presented with muscle spasms.  (Tr. 351-52).

Plaintiff was seen again by Dr. Magas in July, September, November, and December of 2011 and February 2012.  Each time, he continued to complain of back pain.  At each visit, Dr. Magas noted that plaintiff's lumbar vertebrae were tender to palpitation with tense and tender paralumbar muscles.  However, his range of motion was full and his gait was normal.  (Tr. 20, 347, 349, 372, 374).

On December 11, 2011, Dr. Magas completed a medical source opinion form for plaintiff.  In that document, he stated that plaintiff could only stand or walk for 10 to 15 minutes per hour and could only sit for 15 to 20 minutes in a two to three-hour period.  He also stated that plaintiff could lift or carry less than five pounds frequently and occasionally lift 10 pounds.  He listed his clinical findings as "chronic back pain; muscle spasms."  (Tr. 343).  He also stated that plaintiff's disabling pain would cause him to miss, on average, more than four days of work per month.  (Tr. 345).

On January 11, 2012, plaintiff presented to Eliza Coffee Memorial Hospital complaining of low back pain, testicular pain and left leg tingling. (Tr. 363). The records note that plaintiff has a history of sciatica on the right, but that this time the pain is on the left. His back was noted to be non-tender with a painless range of motion. No neurological deficits were noted and straight leg raising tests were negative. Nonetheless, he was diagnosed with acute low back pain and prescribed Lortab. (Tr. 21, 365-66).

Plaintiff also was seen by Dr. Louise Ledbetter, M.D., a neurologist, on January 25, 2012. He described having ongoing pain on the left side of his body and diffuse stiffness in his joints. He also complained of "recent" low back pain radiating into the left leg. Dr. Ledbetter's impressions were a history of cerebrovascular accident, lumbar disk displacement, low back pain, chronic pain syndrome, and a poor sleep pattern. Lumbosacral nerve root lesions were also noted, and a nerve conduction study was ordered. (Tr. 21).

The nerve conduction study occurred on January 30, 2012, and the results reflected findings consistent with left peroneal neuropathy with chronic denervation superimposed on more diffuse peripheral neuropathy. Plaintiff was seen again by Dr. Ledbetter on February 10, 2012. Her examination showed normal gait and balance, no motor weakness, and normal fine motor skills. He was in no acute distress. Her

impressions were that plaintiff suffered from a history of cerebrovascular accident, low back pain, and peroneal and peripheral neuropathy.  (Tr. 21, 378, 379).

## V.    Discussion

The ALJ reviewed all the medical evidence in the record.  The only assessment provided by a physician in this matter was that provided by Dr. Magas in his December 2011 medical source opinion, where he found plaintiff could only stand or walk for 10 to 15 minutes per hour and could only sit for 15 to 20 minutes in a two to three-hour period, could only lift up to five pounds frequently, and would miss four or more days of work per month due to his disabling pain.  The ALJ found that the assessments of Dr. Magas were not entitled to substantial weight.  In particular, the ALJ found that plaintiff's allegations of severe and constant pain were not supported by the results of objective tests or examinations.

The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotation marks omitted).  "Good cause" exists when

- •    the treating physician's opinion was not bolstered by the evidence;

- •    the evidence supported a contrary finding; or

- the treating physician's opinion was conclusory or inconsistent with his or her own medical records.

*Id.* at 1241 (citation omitted). The ALJ must clearly articulate his or her reasons for disregarding a treating physician's opinion, and the failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). However, when the ALJ adequately states specific reasons for doing so, and those reasons are supported by substantial evidence, there is no such error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (*per curiam*). The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments. *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981).[1] Contrary to plaintiff's argument, the ALJ provided sufficient information and evaluation within her decision to demonstrate the weight given to the various medical opinions in the record. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

The ALJ based her reasons for giving less than substantial weight to the treating physician's assessments of plaintiff, in part, on a 2003 MRI of plaintiff's

---

[1] Decisions rendered after October 1, 1981, by a former Fifth Circuit Unit B panel are binding on this court. *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

lumbar spine wherein he only had minimal disk bulging at L4-L5 and L5-S1, with no evidence of any significant foraminal or spinal cord stenosis. (Tr. 22). Although not mentioned by the ALJ, the results of the April 2011 MRI reflect that plaintiff's condition had not worsened extensively. At that time, there was evidence of mild to moderate right L3 through L5 and bilateral L5-S1 foraminal stenosis. However, the impression of the radiologist was that plaintiff suffers from only mild diffuse lumbar disc bulging and facet degenerative change resulting in mild L4-L5 spinal stenosis. (Tr. 360).

In addition, the ALJ noted that, while the claimant testified that he missed up to three days of work due to pain before he was terminated in 2008, the record shows no evidence of any significant treatment around the time that he last worked, per his "Disability Report." (Tr. 22). The ALJ further noted that plaintiff testified at the hearing that he received unemployment for some time after he stopped working. In applying for and receiving unemployment benefits, plaintiff stated that he was ready, willing and able to work if work could be found. Although plaintiff amended the onset date of his disability from 2008 to June 2010, the ALJ found it pertinent that plaintiff did not receive any medical treatment during the time he was still employed and was allegedly missing a lot of work due to pain. (Tr. 22).

Although plaintiff asserts that the medical records of Dr. Gill support his claim of constant pain, the ALJ found evidence of possible exaggeration by plaintiff of his symptoms when seen by Dr. Gill.  She based this on the fact that, when seen by Dr. Gill on January 25, 2011, plaintiff exhibited a severely limited range of motion in the lumbar spine, with only 20 degrees of forward flexion and 5 degrees of rotation. However, when seen by Dr. Magas on February 5, 2011, plaintiff's range of motion was full, as was noted in the previous and subsequent office records of Dr. Magas, and by Dr. Ledbetter in January and February 2012.  It is also noted that plaintiff denied having any problems with leg weakness when seen by Dr. Ledbetter on January 25, 2012.  (Tr. 23).

The ALJ also states that plaintiff claimed at the hearing that his pain is constantly at 9 on a scale of 1 to 10, consistent with severe, excruciating pain. However, Dr. Magas' records reflect that plaintiff stated on numerous occasions that his pain level was this high only when not on medication and that, when on medication, his pain level was only a 4 to 5 or 6 on the 10-point scale, indicative of a moderate pain level.  The ALJ found this to be inconsistent with Dr. Magas' pain assessment of plaintiff.  (Tr. 23).

The ALJ further notes that, although plaintiff was diagnosed as having a cerebrovascular accident, all of the imaging studies at that time were negative for any

abnormalities that could account for his symptoms.  Hospital records show that plaintiff's expressive aphasia resolved on the evening of admission, and his hemipharesis resolved the following morning.  The ALJ found that this is inconsistent with his allegations at the hearing that he had to go to therapy to get his strength back to walk.  The ALJ stated that the records reflect that, with the exception of Dr. Gill, motor strength in the legs, as well as gait and balance, have been noted to be normal.  Furthermore, plaintiff returned to work after the stroke and continued to work for several years, which the ALJ also found inconsistent with his allegations of constant left-sided pain.  (Tr. 22).

In addition, the ALJ found that other medical records did not support plaintiff's claim of chronic left side pain.  After his cerebrovascular accident in 2001, the record shows no complaints of any problems or pain related to his left side until June and August 2010.  The record then essentially shows no further complaints of left side pain until he was seen by Dr. Ledbetter in January 2012.  Dr. Magas' records show treatment primarily for complaints of lower back pain and right radicular pain and anxiety.  While the nerve conduction studies showed left peripheral and peroneal neuropathy in January 2012, Dr. Ledbetter's examinations in January and February 2012 showed left hand grip strength of 4/5 and 4/5 in both legs with a conclusion of no motor weakness, no sensory loss, and normal gait and balance.  When seen in the

emergency room in January 2012, it was noted that the straight leg raising tests were negative and there were no neurological deficits.  (Tr. 21-22).

The ALJ also noted several other reasons why plaintiff's credibility is open to question.  In particular, he noted that plaintiff stated on his "Function Report" that he can only walk 10 feet and then has to stop and rest for five to six minutes before he can walk again.  He also stated that he can stand for only two to three minutes at a time.  At the hearing he stated that he can stand and sit for 15 minutes at a time.  However, the ALJ noted that plaintiff had no problem sitting through two hearings held in this matter, the first of which lasted an hour, and the second one which was not quite so long.  In addition, as noted above, all his neurological examinations have been normal and his gait, range of motion and strength have been noted by his physician as normal on numerous occasions.  The ALJ states that these findings are clearly inconsistent with his allegations of a severely limited ability to stand, walk, or sit.  (Tr. 23-24).

A claimant who seeks "to establish a disability based on testimony of pain and other symptoms" must show the following:

- Evidence of an underlying medical condition; and

- Either:

  - objective medical evidence confirming the severity of the alleged pain; or

- that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). An ALJ must articulate "explicit and adequate reasons" in order to discredit subjective testimony. *Id.* (citation omitted). Failure to do so "requires, as a matter of law, that the testimony be accepted as true." *Id.* (citation omitted). However, the ALJ does not need to "specifically refer to every piece of evidence in his decision," so long as the decision shows that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted).

The ALJ here was both explicit and convincing in explaining why she did not believe plaintiff had adequately proven an "underlying medical condition" that "confirm[ed] the severity of the alleged pain" or which could "reasonably be expected to give rise to his claimed pain." Furthermore, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). In this case, the ALJ based her conclusions on the objective medical evidence, including test results and multiple examinations by several physicians. All support her conclusion that plaintiff's pain is not as severe as he claims. The only evidence to the contrary is plaintiff's claim that he suffers from pain, 9 on a scale of 10, constantly. However, there is nothing other than his

subjective claim to support this, and even he made repeated statements to physicians that his pain was considerably less when on medication.

In determining the plaintiff's RFC, the ALJ posed a hypothetical question to the VE at the hearing that incorporated all of the limitations supported by the record. (Tr. 60-67). In response, the VE testified that such an individual could perform other work existing in significant numbers in the national economy, such as labor production assembler, wire threader and egg breaker. (Tr. 25, 62-63). Substantial evidence supports the ALJ's RFC findings and hypothetical question to the VE. The ALJ therefore properly relied on the VE's testimony to find that plaintiff could perform other work. (Tr. 25-26). *See Phillips v. Barnhard*, 357 F.3d 1232, 1242-44 (11th Cir. 2004) (setting out procedure to determine what work, if any, a claimant can perform). Furthermore, opinions on such issues as whether a claimant is unable to work or is "disabled" and the claimant's RFC "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Thus, although a physician's opinion regarding what a claimant can still do or his restrictions are relevant evidence, such opinions are not determinative because the

ALJ has the responsibility of assessing the claimant's RFC.  *See* 20 C.F.R. §§ 404.1512(b)(2), 404.1513(b)(6), 404.1527(d)(2), 404.1545(a)(3), 416.927(d)(2).

## VI.    Conclusion

The ALJ properly considered the relevant evidence and performed her duty as the trier of fact in resolving any conflicts in the evidence.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (citation omitted).  A review of the medical evidence and the hearing decision demonstrates that the ALJ applied the correct legal standards in evaluating plaintiff's case and that her findings are supported by substantial evidence.  Because the court has determined that the hypothetical question contained all of plaintiff's credible limitations, as supported by the record, the ALJ properly relied on the VE's testimony to determine the work plaintiff could perform. Because the ALJ's decision is supported by substantial evidence, the decision of the Commissioner is due to be AFFIRMED.  A separate order will be entered.

DONE and ORDERED this 15th day of April, 2016.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE